# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## No. 16-1864

## LINDA MERRITT,

### APPELLANT,

### v.

## PNC BANK, NATIONAL ASSOCIATION,

### APPELLEE.

APPEAL FROM ORDER OF THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA (CASE
NO. 15-04282), AFFIRMING ORDER ENTERED BY THE UNITED
STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA (BANKRUPTCY CASE NO. 11-18134)

## BRIEF OF APPELLEE
## PNC BANK, NATIONAL ASSOCIATION

February 2, 2017

Matthew G. Summers, Esquire
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Tel: (302) 252-4428
Fax: (302) 252-4466
Email: summersm@ballardspahr.com

*Attorneys for Appellee PNC Bank, National
Association*

## CORPORATE DISCLOSURE STATEMENT

PNC Bank, National Association, by and through its undersigned counsel and pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 16.1 of the Third Circuit Local Appellate Rules, hereby certifies as follows:

PNC Bank, National Association, is a national bank and indirect subsidiary of The PNC Financial Services Group, Inc., which is a publicly-traded entity on the New York Stock Exchange.  No one person owns more than 5% of the stock of The PNC Financial Services Group, Inc.

National City Mortgage was a direct or indirect subsidiary or division of National City Bank.  On or about November 7, 2009, National City Bank merged with and into PNC Bank, National Association, and no longer exists as a separate entity.

Dated:  February 2, 2017

*/s/ Matthew G. Summers*
Matthew G. Summers
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Tel: (302) 252-4428
Fax: (302) 252-4466
Email: summersm@ballardspahr.com

*Attorneys for Appellee PNC Bank, National Association*

# TABLE OF CONTENTS

**Page**

I.    JURISDICTIONAL STATEMENT ..................................................................1

II.   STATEMENT OF ISSUES PRESENTED ....................................................2

III.  STATEMENT OF THE CASE ........................................................................4

    A.  History of the Loan and the State Court Foreclosure Action................4

    B.  The Bankruptcy Case, the Proof of Claim, and the Adversary Proceeding ........................................................................................6

    C.  The Claim Objection ............................................................................8

    D.  The Appeal to the District Court ........................................................10

IV.   SUMMARY OF ARGUMENT ....................................................................11

V.    ARGUMENT ................................................................................................12

    A.  This Appeal is solely from the Order Denying Motion for Reconsideration ....................................................................................12

    B.  The Bankruptcy Court and District Court Correctly Concluded that Loan Servicers Have Standing to Prosecute Proofs of Claim.............13

    C.  The Debtor's Argument That PNC Should Have Been Required to Present Evidence, Beyond the Proof of Claim Itself, Turns the *Prima Facie* Validity of Proofs of Claim on Its Head ..................................17

    D.  The Bankruptcy Court Correctly Concluded that PNC Had Not Perpetrated a Fraud on the Court by Redacting the Loan Identifier ...19

    E.  The Debtor Previously Litigated the Issue of PNC's Standing in the State Court Foreclosure Proceeding.....................................................22

    F.  Debtor's Argument Concerning Merger of the Note With the Foreclosure Judgment Was Not Raised Below ...................................28

VI.   CONCLUSION.............................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abboud v. Abboud (In re Abboud)*,
  237 B.R. 777 (B.A.P. 10th Cir. 1999) ...............................................28

*Barnes Foundation v. Twp. of Lower Merion*,
  242 F.3d 151 (3d Cir. 2001) ................................................................3

*Belcufine v. Aloe*,
  112 F.3d 633 (3d Cir. 1997) ......................................................19, 28

*Brown v. Philadelphia Hous. Auth.*,
  350 F.3d 338 (3d Cir. 2003) .................................................................2

*D.C. Court of Appeals v. Feldman*,
  460 U.S. 462 (1983).............................................................................26

*Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005).............................................................................26

*Forever Green Ath. Fields, Inc. v. Dawson*,
  514 B.R. 768 (E.D. Pa. 2014) .........................................................4, 19

*Greer v. O'Dell*,
  305 F.3d 1297 (11th Cir. 2002) .........................................................13

*Herring v. United States*,
  424 F.3d 384 (3d Cir. 2005) ..............................................................20

*In re Alcide*,
  450 B.R. 526 (Bankr. E.D. Pa. 2011) ..............................13, 15, 16, 17

*In re Allegheny International, Inc.*,
  954 F.2d 167 (3d Cir. 1992) ..............................................................18

*In re Brooks*,
  2008 WL 416268 (Bankr. E.D. Pa. Feb. 13, 2008) ...........................25

*In re Conde-Dedonato*,
   391 B.R. 247 (Bankr. E.D.N.Y. 2008) ...............................................................14

*In re Daly*,
   2015 WL 196509 (Bankr. S.D.N.Y. Jan 14, 2015) ...........................................13

*In re Gulley*,
   436 B.R. 878 (Bankr. N.D.Tex. 2010).................................................................13

*In re Knapper*,
   407 F.3d 573 (3d Cir. 2005) ...............................................................................27

*In re Madera*,
   586 F.3d 228 (3d Cir. 2009) ...............................................................................27

*In re McKinney*,
   507 B.R. 534 (Bankr. W.D. Pa. 2014).................................................................20

*In re Minbatiwalla*,
   424 B.R. 104 (Bankr. S.D.N.Y. 2010).................................................................14

*In re Olick*,
   311 Fed. App'x 529, 2008 WL 2265392 (3d Cir. 2008)..................................2, 3

*In re Viencek*,
   273 B.R. 354 (N.D.N.Y. 2002).............................................................................14

*Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*,
   440 B.R. 624 (Bankr. D.N.J. 2010) .....................................................................14

*Manu v. Nat'l City Bank of Indiana*,
   471 Fed. Appx. 101, 2012 WL 928158 (3d Cir. 2012) .......................................27

*McDowell v. Phila. Hous. Auth.*,
   423 F.3d 233 (3d Cir. 2005) .............................................................................2, 3

*Merritt v. PNC Bank, National Association*,
   555 B.R. 471 (E.D. Pa. 2016). ..................................................................1, 11, 12

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923)..............................................................................................26

## OTHER CASES

*Balent v. City of Wilkes-Barre*,
669 A.2d 309 (Pa. 1995)..................................................................22

*Fox v. Gabler*,
626 A.2d 1141 (Pa. 1993)................................................................22

*In PHH Mortg. Corp. 2001 Bishop's Gate Blvd. v. Powell*,
100 A.3d 611, 621 (Pa. Super. 2014) ........................................24, 25

*J.P. Morgan Chase Bank, N.A. v. Murray*,
63 A.3d 1258 (Pa. Super. 2013) .....................................................25

*Stuart v. Decision One Mortgage Co., LLC*,
975 A.2d 1151 (Pa. Super. 2009) ..............................................22, 23

*Twp. Of Ohio v. Builders Enters., Inc.*
276 A.2d 556 (Pa. Commw. Ct. 1971) ............................................23

*Wilkes v. Phoenix Home Life Mut. Ins. Co.*,
902 A.2d 366 (Pa. 2006)..................................................................22

## FEDERAL STATUTES

28 U.S.C. § 156..................................................................................1

28 U.S.C. § 158..................................................................................1

12 U.S.C. § 2601 *et seq.*....................................................................7

## OTHER STATUTES

13 Pa.C.S.A. § 1201.........................................................................24

13 Pa.C.S.A. § 3203.........................................................................24

13 Pa.C.S.A. § 3301....................................................................23, 24

13 Pa.C.S.A. § 3302....................................................................23, 24

## RULES

Fed. R. Bankr. 3001 ...............................................................13, 16, 18

Fed. R. Bankr. P. 9037 ............................................................................6, 12, 20, 21

Fed. R. Civ. P. 59 ........................................................................................................2

Fed. R. Civ. P. 60 ........................................................................................................2

Pa. R.C.P. 1019 ...........................................................................................................5

Pa. R.C.P. 1141 ...........................................................................................................5

Appellee PNC Bank, National Association ("PNC") submits this Brief pursuant to Rules 28 and 32 of the Federal Rules of Appellate Procedure.

## I.    JURISDICTIONAL STATEMENT

The Jurisdictional Statement contained in the "Opening Brief" of Appellant Linda Merritt (the "Debtor") incorrectly asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 156(a).

While PNC does not dispute the conclusion that this Court has jurisdiction over the Debtor's appeal from the Order Denying Motion for Reconsideration (R. 265-276)[1] entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") and the decision by the United States District Court for the Eastern District of Pennsylvania (the "District Court") affirming the Bankruptcy Court's Order Denying Motion for Reconsideration, that jurisdiction arises pursuant to 28 U.S.C. § 158(d)(1), not 28 U.S.C. § 156(a).

Further, as the District Court correctly determined, the Debtor did not appeal the Bankruptcy Court's Order overruling the Debtor's Objection to PNC's claim (R. 277) (the "Claim Objection Order") to the District Court. *Merritt v. PNC Bank, National Association,* 555 B.R. 471, 475 n.3 (E.D. Pa. 2016).  Likewise, the Debtor's Notice of Appeal to this Court references only the District Court's decision affirming the Bankruptcy Court's Order Denying Motion for

---

[1] The designation "R." refers to the Appendix and Addendum to Appendix to the Debtor's Opening Brief.

1

Reconsideration. (R. 251.) It does not reference the District Court's treatment of the Claim Objection Order. As a result, this appeal involves only the Order Denying Motion for Reconsideration and does not involve the underlying Claim Objection Order.

## II.    STATEMENT OF ISSUES PRESENTED

PNC is dissatisfied with the Statement of Issues Presented contained in the Debtor's Opening Brief and submits that the following is a correct statement of the issues presented in this appeal:

Issue No. 1: Whether the Bankruptcy Court and District Court correctly concluded that there was no valid basis for reconsidering the Claim Objection Order where the Debtor repeatedly admitted that PNC was the servicer of the Debtor's Mortgage Loan[2] and virtually every court which has addressed the issue has concluded that servicers of mortgage loans have standing to file proofs of claim in bankruptcy cases.

Standard of Review: A bankruptcy court's denial of a motion to reconsider a claim objection is reviewed for abuse of discretion. *See In re Olick*, 311 Fed. App'x 529, 531, 2008 WL 2265392 at *2 (3d Cir. 2008) (citing *McDowell v. Phila. Hous. Auth.,* 423 F.3d 233, 238 (3d Cir. 2005) (denial of Rule 59(e) motion reviewed for abuse of discretion)); *Brown v. Philadelphia Hous.*

---

[2]  Capitalized terms in the statement of issues have the meanings hereafter ascribed to them in this brief.

2

*Auth.,* 350 F.3d 338, 342 (3d Cir. 2003) (denial of Rule 60(b) motion reviewed for abuse of discretion).  Judicial discretion is abused only when the court acts in an arbitrary, fanciful or unreasonable manner or where it uses improper legal standards, criteria or procedures.  *Barnes Foundation v. Twp. of Lower Merion,* 242 F.3d 151, 167 (3d Cir. 2001); *McDowell*, 423 F.3d at 238 ("An abuse of discretion may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact.")

Issue No. 2:  Whether the District Court properly affirmed the Bankruptcy Court's denial of the Debtor's Motion for Reconsideration on the basis that PNC committed a fraud on the court where PNC affirmatively disclosed in its response to the Claim Objection that Freddie Mac was the investor in the Mortgage Loan, where PNC provided unredacted copies of the Note and Mortgage containing the Freddie Mac loan identifier to the Bankruptcy Court in connection with the Claim Objection and other filings, and where the Bankruptcy Court concluded that no fraud was perpetrated on it.

Standard of Review:  A bankruptcy court's denial of a motion to reconsider a claim objection is reviewed for abuse of discretion.  *See Olick*, 311 Fed. App'x at 531, 2008 WL 2265392 at *2.

Issue No. 3:  Whether the Debtor waived arguments concerning merger of the Mortgage with the foreclosure judgment and the alleged absence of evidence of

3

the terms of the servicing agreement between PNC and Freddie Mac by failing to raise those issues before the Bankruptcy Court.

   <u>Standard of Review:</u>   Issues not raised by an appellant in the bankruptcy court below or fully argued in an appellant's opening brief are deemed waived and subject to dismissal.  *See Forever Green Ath. Fields, Inc. v. Dawson*, 514 B.R. 768, 782 (E.D. Pa. 2014).

## III. <u>STATEMENT OF THE CASE</u>

  PNC is dissatisfied with the Statement of the Case contained in Debtor's Opening Brief and submits that the following is a correct statement of the case.

### A. <u>History of the Loan and the State Court Foreclosure Action</u>

  The Debtor owns improved residential real property commonly known as 699 West Glen Rose Road, Coatesville, PA 19320 (the "Property").  (R. 10.)  The Debtor resides in the Property.  (R. 11.)  On November 24, 2005, the Debtor executed and delivered a Note (the "Note") payable to the order of National City Mortgage Co. ("National City") and a Mortgage (the "Mortgage") granting National City a lien against the Property as security for performance of the Debtor's obligations under the Note, including the obligation to make payments as and when due.  (R. 64, & 69-85.)  PNC is a successor by merger to National City. (R. 68.)  The indebtedness evidenced by the Note and Mortgage is referred to herein as the "Mortgage Loan."

On May 11, 2010, as a result of the Debtor's payment defaults in connection with the Mortgage Loan, PNC commenced a foreclosure action in the Chester County Court of Common Pleas (the "State Court"), Case No. 2010-05953 (the "Foreclosure Action").   PNC averred in the Complaint filed commencing the Foreclosure Action that "it is the legal **holder** of the Mortgage that is the subject of this action."   (R. 145.) (emphasis added).   Pursuant to Pa. R.C.P. 1141 and Pa. R.C.P. 1019(g), the Note and Mortgage were incorporated into the foreclosure complaint by reference to the recorded mortgage and did not need to be separately attached.

After the Debtor failed to respond to PNC's complaint, the State Court entered a default judgment against the Debtor in the Foreclosure Action. Thereafter, the Debtor filed a "Petition to Open Judgment and Answer and New Matter Counterclaim" (the "Petition to Open Judgment").  (R. 156-164.)  In the Petition to Open Judgment, the Debtor asserted, among other things, that PNC failed to produce any evidence that it was the holder of the Note and Mortgage. (*Id.*)  Debtor's Petition to Open Judgment was denied by the State Court by Order signed on October 28, 2010.  (Bankruptcy Case Dkt. No. 304, Ex. A.)  The Debtor appealed the State Court's decision denying the Petition to Open Judgment.  That appeal was dismissed on January 10, 2011, because the Debtor failed to prosecute the appeal.  (Adv. Proc. Dkt. No. 3, Ex. C.)

## B.    The Bankruptcy Case, the Proof of Claim, and the Adversary Proceeding

The Debtor is a debtor under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code"), pursuant to a voluntary petition for relief filed by the Debtor on October 21, 2011 (the "Petition Date"), commencing *In re Linda Merritt*, Case No. 11-18134 (JKF) (the "Bankruptcy Case"), in the Bankruptcy Court.  The Honorable Jean K. FitzSimon presided over the Bankruptcy Case and all related adversary proceedings.

On November 14, 2011, PNC filed a proof of claim (Claim No. 4-1) (the "Proof of Claim") asserting a claim in the amount of $358,866.71 secured by the Property pursuant to the Mortgage.  (R. 222.)  The Proof of Claim asserted that the Debtor's arrears under the Mortgage Loan totaled $86,790.27 as of the Petition Date.  (*Id.*)  PNC attached a copy of the Note and Mortgage to its Proof of Claim and, in accordance with Rule 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") redacted certain personally identifiable information, including the Freddie Mac loan identifier.  On their face, the Note is payable to National City and the Mortgage identifies National City as the lender.  (R. 229-249.)  The Note and Mortgage also state, on their face, that the form used for each was the "Fannie Mae/Freddie Mac Uniform Instrument."  (R.  229 & 246.)

On November 29, 2012, the Debtor filed a complaint (the "Original Complaint") against PNC in the Bankruptcy Court, commencing Adversary

6

Proceeding No. 12-00687-jkf (the "Adversary Proceeding" or "Adv. Proc."). The Original Complaint purported to assert claims for fraud, abuse of process, and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), against PNC. The gravamen of the Original Complaint was that PNC lacked standing to prosecute the Foreclosure Action because it was not the owner of the Note and Mortgage and had misrepresented its status as owner of the Note and Mortgage to the State Court. The Debtor also alleged that PNC had failed to inform the Debtor that the servicer of the Mortgage Loan had changed from National City to PNC as a result of the merger of National City and PNC, and that such failure violated RESPA. (Adv. Proc. Dkt. No. 1.)

PNC moved to dismiss the Original Complaint on the basis that it had only represented it was the holder of the Note and Mortgage in the Foreclosure Action (and, as such, was entitled to enforce the same) and had not represented that it was the owner of the Mortgage Loan. (Adv. Proc. Dkt. No. 3.) The Bankruptcy Court agreed with PNC and, on March 25, 2013, the Bankruptcy Court dismissed all of the claims asserted by the Debtor in the Original Complaint. The Bankruptcy Court dismissed the Debtor's claims for fraud and violation of RESPA with prejudice but granted the Debtor leave to amend her abuse of process claim. (Adv. Proc. Dkt. No. 13.)

On July 2, 2013, the Debtor filed an amended complaint in the Adversary Proceeding, reasserting her abuse of process claim (the "Amended Complaint"). The abuse of process claim in the Amended Complaint was premised upon the allegation that PNC's representations in the Foreclosure Action and the Bankruptcy Case that it was the holder of the Note and Mortgage were fraudulent because Freddie Mac was, in fact, the investor or owner of the Mortgage Loan. (Adv. Proc. Dkt No. 17.)  Following additional motion practice, on December 12, 2014, the Bankruptcy Court dismissed the Debtor's amended complaint.  (R. 278-283.)  The Debtor twice requested reconsideration of the Bankruptcy Court's dismissal of the Adversary Proceeding.  The Bankruptcy Court denied both requests for reconsideration by orders entered on December 22, 2014, and January 5, 2015.  (Adv. Proc. Dkt. Nos. 49 & 56.)  The Debtor did not appeal from the Bankruptcy Court's dismissal of the claims asserted in the Adversary Proceeding or the denial of her motions for reconsideration.

### C.    The Claim Objection

Notwithstanding the Bankruptcy Court's ruling in the Adversary Proceeding, on February 17, 2015, the Debtor filed an objection to PNC's Proof of Claim (R. 52-57) (the "Claim Objection").[3]

---

[3] On January 7, 2015, the Debtor filed a motion to cram-down PNC's secured claim to the value of the Property, which the Bankruptcy Court denied.  The Debtor appealed the denial of the reconsideration of the cram-down motion to the

8

In the Claim Objection, the Debtor again asserted, as she had done in the Adversary Proceeding, that PNC lacked standing to file the Proof of Claim because Freddie Mac was the "owner" of the Debtor's Note and Mortgage, not PNC.  (R. 53-55.)  However, the Debtor affirmatively stated in the Claim Objection that "PNC admittedly is the mortgage servicer."  (R. 56.)

PNC responded to the Claim Objection by arguing, among other things, that the Claim Objection was meritless because PNC was the holder of the Note and Mortgage, PNC was the servicer of the Mortgage Loan, and the Debtor's claims were barred by the doctrine of *res judicata* and the *Rooker-Feldman* doctrine.  (R. 62-63 and Bankruptcy Case Dkt. No. 304).

On June 16, 2015, the Bankruptcy Court conducted a hearing on the Claim Objection.  (R. 206-211.)  During the June 16 hearing, Debtor's counsel stated that the sole basis for the Claim Objection was that PNC was not the "owner" of the Note and Mortgage, even though the Debtor conceded that PNC was the servicer, and that PNC had perpetrated a fraud on the court by redacting the Freddie Mac loan identifier from the exhibits to the Proof of Claim.  (R. 206-211.)  At the conclusion of argument, the Bankruptcy Court asked whether counsel to the Debtor had "any other argument with regard to the proof of claim form?"  (R.210.)

---

District Court, which affirmed the Bankruptcy Court.  The Debtor did not argue her appeal of the cram-down motion in her Opening Brief to this Court and has abandoned that appeal.

Debtor's counsel responded, "No, Your Honor," and, after a brief colloquy with PNC's counsel, the Bankruptcy Court issued an oral opinion overruling the Claim Objection and entered an order consistent with its oral opinion later on the same day.  (R. 211 & 277.)    Thereafter, the Debtor filed a motion to reconsider the Bankruptcy Court's order overruling the Claim Objection (the "Motion for Reconsideration"), which motion the Bankruptcy Court denied on July 22, 2015. (R. 265-276.)  The Debtor did not argue that PNC had exceeded its authority under the terms of its servicing agreement with Freddie Mac by filing the Proof of Claim.

On August 4, 2015, the Debtor filed a notice of appeal, appealing only from the Bankruptcy Court's denial of the Motion for Reconsideration to the District Court. (R. 296. & District Court Dkt. No. 1)

### D.    <u>The Appeal to the District Court</u>

In a reported decision, the District Court (The Honorable Gerald J. Pappert presiding), affirmed the Bankruptcy Court's Order Denying Motion for Reconsideration.  *Merritt*, 555 B.R. at 477.  The District Court reasoned that since the Debtor acknowledged PNC was the servicer and because PNC was the holder of the Note by virtue of its acquisition of National City, PNC had standing to file the proof of claim.  *Id*.  The District Court further reasoned that the fact Freddie Mac is the owner of the Note was not dispositive because "whether or not PNC owns the Note is irrelevant to its standing to file a Proof of Claim."  *Id*.  Instead,

10

standing to file a proof of claim derives from PNC's undisputed status as servicer of the Mortgage Loan and from PNC's status as holder of the Note, which makes PNC a person entitled to enforce the Note under Article 3 of the Pennsylvania Uniform Commercial Code. *Id.* As to the argument that PNC perpetrated a fraud on the Bankruptcy Court by redacting Freddie Mac's name from the Note attached to the Proof of Claim, the District Court concluded, "[t]he Court cannot now find on appeal that the Bankruptcy Court erred in stating what only it could know—whether or not it was misled." *Id*. at 478.

On April 5, 2016, the Debtor appealed the District Court's decision and, in the text, stated that the Debtor was appealing the Bankruptcy Court's Order Denying Motion for Reconsideration. The Debtor did not appeal from the Claims Objection Order or the District Court's treatment of that order.

## IV.    <u>SUMMARY OF ARGUMENT</u>

There is no basis to overturn the Bankruptcy Court's conclusion, which was affirmed by the District Court, that PNC, as servicer of the Mortgage Loan and holder of the Note, had standing to file the Proof of Claim in the Bankruptcy Case. Both the Bankruptcy Court and the District Court properly concluded that the Debtor's admission that PNC is the servicer of the Mortgage Loan was fatal to the Debtor's third attempt to litigate the issue of PNC's standing to enforce the Note and Mortgage.

11

Moreover, the Bankruptcy Court properly concluded that the Debtor's assertion that PNC perpetrated a fraud on the Bankruptcy Court by redacting, in accordance with Bankruptcy Rule 9037, the Freddie Mac loan identifier on the exhibits submitted with its Proof of Claim was without merit because, among other things, the Bankruptcy Court was not, in fact, deceived.

As such, Debtor's arguments in support of its appeal from the Bankruptcy Court's Order Denying Motion for Reconsideration and the District Court's decision affirming the Bankruptcy Court should be rejected as failing to demonstrate the Bankruptcy Court abused its discretion or committed clear error.

## V.    **ARGUMENT**

### A.    **This Appeal is Solely from the Order Denying Motion for Reconsideration**

While the notice of appeal to the District Court referenced the Claim Objection Order in the title, the notice of appeal did not identify the Claim Objection Order as an order from which the Debtor was appealing in its text. (Dist. Ct. Dkt. No. 1).  Because of this failure, the District Court determined that the Debtor appealed only from the Order Denying Motion for Reconsideration and not from the order denying the Claim Objection.  *Merritt*, 555 B.R. at 475, n. 3.

Likewise, the Debtor's Notice of Appeal to this Court references only the District Court's decision affirming the Bankruptcy Court's Order Denying Motion

for Reconsideration (R. 251) and does not reference the District Court's determination that the Debtor failed to appeal from the Claim Objection Order.

As a result, this appeal involves only the Order Denying Motion for Reconsideration, does not involve the underlying Claim Objection Order, and the appropriate standard of review is abuse of discretion.

### B.     The Bankruptcy Court and District Court Correctly Concluded that Loan Servicers Have Standing to Prosecute Proofs of Claim

Bankruptcy Rule 3001(b) provides that a proof of claim may be executed by "the creditor or the creditor's agent."  Fed. R. Bankr. P. 3001(b).

Consistent with this language, those courts that have addressed the issue have nearly unanimously held that loan servicers have standing to file proofs of claim in bankruptcy cases. *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) ("A servicer is a party in interest in proceedings involving loans which it services."); *In re Daly*, 2015 WL 196509 at *4 (Bankr. S.D.N.Y. Jan 14, 2015) (creditor whom debtor admitted was servicer "clearly has standing" to file proof of claim); *In re Alcide*, 450 B.R. 526, 537, n.22 (Bankr. E.D. Pa. 2011) (collecting cases); *In re Gulley*, 436 B.R. 878, 892 (Bankr. N.D.Tex. 2010) ("many courts have held that a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of a note"); *Kemp v. Countrywide Home Loans, Inc. (In re Kemp)*, 440 B.R. 624, 634 (Bankr. D.N.J. 2010) (recognizing "[a] servicer has standing to file a

13

proof of claim on behalf of a creditor"); *In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010); *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer."); *In re Viencek*, 273 B.R. 354, 358 (N.D.N.Y. 2002).

Relying upon this extensive line of cases, the Bankruptcy Court concluded that PNC had standing to file the Proof of Claim in the Bankruptcy Case because the Debtor admitted, indeed repeatedly conceded, that PNC was the servicer of the Mortgage Loan.  The record could not be clearer on this point:

> THE COURT: But your client has admitted that [PNC's]
> an assignee, right?
> MR. PENN: No.
> THE COURT: Counsel?
> MR. PENN: To being a servicer of the mortgage, yes,
> Your Honor --
> THE COURT: Okay.
> MR. PENN: -- I would agree with that.

(R. 208.)  The Debtor made similar admissions in the papers it filed with the Bankruptcy Court and the District Court, and, in fact, the Debtor again concedes that PNC is the servicer in her Opening Brief.  (Debtor's Opening Brief at 1 ("PNC is merely the servicer of the mortgage").)

As a result of this admission and the near unanimity of the relevant case law holding servicers have standing to file proofs of claim in bankruptcy cases, the Bankruptcy Court and the District Court both correctly concluded they did not

14

need to reach the alternative arguments advanced by PNC that the Debtor's third attempt to litigate the issue was barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata*.[4]

The Bankruptcy Court and the District Court also were correct in their application of *In re Alcide*.  In *Alcide*, Judge Frank, a bankruptcy judge in the Eastern District of Pennsylvania, addressed the issue of a loan servicer's standing to prosecute a motion for relief from stay to proceed with foreclosure and "to enforce a creditor's rights under a mortgage" where the evidence presented in support of the loan servicer's standing as a holder in due course of the mortgage note had been placed in dispute by contradictory evidence.  *Alcide*, 450 B.R. at 536-537.  While finding that in the context of a motion for relief from stay, a servicer may be required to provide evidence of its right to commence a foreclosure, the *Alcide* court expressly distinguished the requirements for standing to file a proof of claim.  In making this distinction, Judge Frank noted that "a number of courts have upheld the authority of a mortgage loan servicer to file a proof of claim on behalf of the mortgage holder" and held that "[i]n the proof of claim context, the authority of a servicer to file a proof of claim is expressly authorized by the rules of court."  *Id*. at 537, n.22 (collecting cases and noting Fed.

---

[4] The question of whether PNC was the holder of the Note and Mortgage with standing to foreclose was already determined in the Foreclosure Action and the Adversary Proceeding.

15

R. Bankr. P. 3001(b) permits the filing of a proof of claim by a creditor's authorized agent).

*Alcide* is further distinguishable from the present case because, in contrast to the servicer in *Alcide*, PNC already litigated the Foreclosure Action in the State Court and the State Court concluded PNC had standing to enforce the Note and Mortgage. Moreover, in connection with a motion for relief from stay, the moving creditor has the burden of proving standing. *Alcide*, 450 B.R. at 540 (noting movant's burden in motion for relief from stay to establish itself as a holder of the mortgage or authorized to act in foreclosure "is not difficult to meet, requiring only presentation of the rudimentary elements of its claim."). However, in the context of a proof of claim, the burden of proof is on the Debtor to offer something to rebut the claim's *prima facie* validity, including PNC's standing. Fed. R. Bankr. P. 3001(f) ("proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). The Bankruptcy Court held that the Debtor's legal arguments and identification of Freddie Mac as "owner" of her Note were insufficient to overcome the *prima facie* validity of the Proof of Claim. (R. 274) ("[T]he Debtor having failed to meet her burden of producing evidence to refute the validity of any portion of the Proof of Claim"). Further, the Debtor did not request that the Bankruptcy Court take evidence with respect to the Proof of Claim. (*Id.*)

16

In cases, including *Alcide*, where the servicer's status as servicer is uncontested, as it was in the Bankruptcy Case because the Debtor conceded that PNC was the servicer, the right to collect payments due under a note as servicer is the very fact that confers standing to file and defend a proof of claim. *See Alcide*, 450 B.R. at 540. Indeed, each of the cases that the Debtor cites in support of her argument is distinguishable from the case at bar because those cases involved disputes as to either the servicer's standing as noteholder or the ultimate note owner/investor's identity. Neither is in dispute here. As a result, the Bankruptcy Court's interpretation of *Alcide* was correct and comports with the conclusion reached by virtually all courts that have considered the issue.

As such, it was not clear error or an abuse of discretion for the Bankruptcy Court to determine, based on the Debtor's repeated admissions that PNC was the servicer of the Mortgage Loan, that PNC had standing to file the Proof of Claim.

### C.   The Debtor's Argument That PNC Should Have Been Required to Present Evidence, Beyond the Proof of Claim Itself, Turns the *Prima Facie* Validity of Proofs of Claim on Its Head

The Debtor also argues, for the first time in this Court, that PNC should have been required to present evidence of the terms of its servicing agreement with Freddie Mac. The Debtor's argument turns the evidentiary effect of filing a proof of claim and the *prima facie* validity of a proof of claim established by Bankruptcy Rule 3001 on its head. Fed. R. Bankr. P. 3001(f). Under the cases, the *prima*

17

*facie* validity of a proof of claim requires an objecting party to present evidence to overcome the presumption of validity given to a filed proof of claim. This Court has described the *prima facie* validity and shifting burdens as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. … In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. . . . In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.

*In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

The Debtor did not even request that the Bankruptcy Court allow her to present evidence to rebut the presumed validity of the Proof of Claim and, instead, the Debtor relied solely on argument concerning Freddie Mac's ownership of the Mortgage Loan and the alleged fraud on the Bankruptcy Court resulting from PNC's redaction of the Freddie Mac loan identifier in support of the Claim Objection. (*See* R. 82-83) (Debtor's counsel admitting he had no other argument in support of the Claim Objection other than lack of standing based on Freddie Mac owning the Mortgage Loan and fraud on the court based upon the redaction of the Freddie Mac loan identifier). The Bankruptcy Court, correctly, concluded that

this was insufficient to overcome the *prima facie* validity of the Proof of Claim. (R. 274.)

As explained throughout this brief, the legally relevant inquiry is not whether Freddie Mac is the owner, but, instead, is whether PNC is the holder of the Note and Mortgage or servicer of the Mortgage Loan. It was undisputed that PNC was the servicer of the Mortgage Loan and PNC's status as a holder of the Note and Mortgage were determined by the State Court.

Furthermore, the argument concerning the terms of the servicing agreement and that PNC should be required to provide evidence concerning the precise terms of the servicing agreement was not made in the Claim Objection or, even, the Motion for Reconsideration, and, as a result, that argument is waived in this appeal. (*E.g., Forever Green Ath. Fields, Inc.*, 514 B.R. at 782-783 (citing *Belcufine v. Aloe*, 112 F.3d 633, 638 (3d Cir. 1997) and dismissing issues that were waived by failing to address with bankruptcy court or by failing to brief).

### D.     <u>The Bankruptcy Court Correctly Concluded that PNC Had Not Perpetrated a Fraud on the Court by Redacting the Loan Identifier</u>

The Bankruptcy Court also correctly held that PNC did not commit a fraud on the Court by redacting the Freddie Mac loan identifier from the exhibits to its Proof of Claim. The standard for showing fraud on the court sufficient to either vacate the order denying the Claim Objection or deny the *prima facie* validity of

the Proof of Claim is a "necessarily demanding standard" requiring a showing of "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005). Such a determination may be justified only by the most egregious misconduct directed to the court itself and must be supported by clear, unequivocal, and convincing evidence. *Id.*

There was no evidence whatsoever that PNC or its counsel made any intentional misrepresentation to the Bankruptcy Court. In fact, quite to the contrary of attempting to perpetrate a fraud, PNC redacted the Freddie Mac loan identifier because Bankruptcy Rule 9037 required that it be redacted. Fed. R. Bankr. P. 9037; *In re McKinney*, 507 B.R. 534, 558 (Bankr. W.D. Pa. 2014) (ordering that all exhibits be filed with personal identifiers redacted in accordance with Fed. R. Bankr. P. 9037); (R. 211 (Bankruptcy Court taking into consideration PNC's counsel's statement that motivation for redaction of loan identifier was not an intent to deceive as to the investor's identity but rather to comply with Bankruptcy Rule 9037).) Further, PNC disclosed Freddie Mac's role in its response to the Claim Objection and referred to PNC, itself, as the holder of the Note and Mortgage, as well as the servicer of the Loan, throughout the Bankruptcy Case and the Foreclosure Action. (R. 63, 145.) PNC also provided the Bankruptcy

Court with copies of the Note and Mortgage, without the Freddie Mac loan identifier redacted.

With respect to the last prong of the test, the Bankruptcy Court concluded that it had not, in fact, been deceived by the redaction of the Freddie Mac loan identifier from the exhibits on the Proof of Claim.  (R. 209-210 (THE COURT: "Your argument that there was a fraud perpetrated on the Court doesn't stand because I wasn't -- if for no other reason, I wasn't deceived, which is a requirement for that").)  Only the Bankruptcy Court could know whether it, in fact, had been deceived and the Debtor offers no explanation as to how the Bankruptcy Court committed error with respect to this determination.   The District Court concluded that it could not find on appeal that the Bankruptcy Court erred in stating what only it could know.  *Merritt*, 555 B.R. at 478.  This Court should reach the same result.

Simply put, there was no misrepresentation, let alone an intentional one, and the Bankruptcy Court was not deceived.  There is no valid basis for disturbing these findings on appeal, let alone a basis for finding that the Bankruptcy Court abused its discretion or committed clear error in determining it had not been deceived.

### E.    The Debtor Previously Litigated the Issue of PNC's Standing in the State Court Foreclosure Proceeding.

In addition, as PNC argued to both the Bankruptcy Court and District Court below, the Debtor was barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata* from attempting to litigate, for a third time, the issue of PNC's status as holder of the Note and Mortgage with concomitant standing both to file the Proof of Claim in the Bankruptcy Case and to pursue the Foreclosure Action in State Court.[5]

### 1.    The Debtor's Objection to PNC's Standing to Prosecute its Claim is Barred by *Res Judicata*

Under Pennsylvania Law, the principle of *res judicata* bars litigation of claims that were or could have been litigated in a prior proceeding.  *Wilkes v. Phoenix Home Life Mut. Ins. Co*., 902 A.2d 366, 376 (Pa. 2006); *Balent v. City of Wilkes-Barre*, 699 A.2d 309, 313 (Pa. 1995); *Stuart v. Decision One Mortgage Co., LLC*, 975 A.2d 1151 (2009).  "Judgment by Default is *res judicata*…." *Fox v. Gabler*, 626 A.2d 1141, 1142 (Pa. 1993).  "The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.  *Stuart*, 975

---

[5] As noted above, the Bankruptcy Court explicitly noted in its decision on reconsideration that it did not need to reach these arguments since PNC's standing as servicer and lack of fraud on the Court precluded the need to consider whether PNC's standing to prosecute the foreclosure action was barred under *res judicata* or Rooker-Feldman principles.  (R.266-267 at n.1.)

A.2d at 1153 (*quoting Twp. Of Ohio v. Builders Enters., Inc.* 276 A.2d 556, 557 (Pa. Commw. Ct. 1971)).

Under basic principles of *res judicata* the Debtor has already, on multiple occasions, actually litigated the issue of PNC's standing.  On August 9, 2010, default judgment was entered in favor of PNC and against the Debtor by the State Court in the Foreclosure Action.  On August 19, 2010, Debtor filed the Petition to Open Judgment.  (R. 156-163.)  The Petition to Open Judgment contained defenses to the Foreclosure Action, including but not limited to the claim that PNC was not the legal holder of the note and mortgage. (R. 156-163.)   The Petition to Open Judgment was denied by the State Court and the Debtor's appeal therefrom was dismissed. (Bankruptcy Case Dkt. No. 304, Ex. A; Adv. Proc. Dkt No. 3, Ex. C.)

Throughout Debtor's Opening Brief, the Debtor refers to Freddie Mac as the "holder/owner" of her Note.  The term "holder" is a term of art under Article 3 of the Uniform Commercial Code and is not coterminous with the term "owner."  Pennsylvania law is clear on this issue.

Pennsylvania law is clear that a mortgagee is a real party in interest in a foreclosure action, and the holder of a note and mortgage can enforce the note.  Specifically, Section 3301 of the Pennsylvania Uniform Commercial Code (the "Pa UCC") provides that a holder of a negotiable instrument is a "person entitled to enforce" it.  *See* 13 Pa.C.S.A. § 3301 (1).  Section 3302 of the Pa UCC defines a

"holder in due course" of a negotiable instrument as the holder of an instrument if "the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity;" and the holder took the instrument for value and in good faith. *See* 13 Pa.C.S.A. § 3302(a). Finally, Section 1201 defines a "holder," in relevant part, as "the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession." *See* 13 Pa.C.S.A. § 1201(b)(21)(i). However, the "holder" in "possession" is not necessarily the same person as the ultimate owner, a fact courts have often addressed.

As the Pennsylvania Superior Court has explained, ownership of a mortgage note is "not relevant" to the determination of whether a person or entity is the note "holder" with the right to enforce the note under the Pa. UCC. *See In PHH Mortg. Corp. 2001 Bishop's Gate Blvd. v. Powell*, 100 A.3d 611, 621 (Pa. Super. 2014) (citing the Comment to Section 3203 of the Pa. UCC distinguishing between the status of owner and holder of a negotiable instrument). Specifically, the Court stated that PHH:

> established as a matter of law that it is a holder in due course of the [borrower's] note and thus is 'entitled to enforce' it pursuant to section 3301 of the Pennsylvania Uniform Commercial Code[,] [e]vidence that some other entity may be the 'owner' or an 'investor' in the Note is not relevant to this determination, as the entity with the right to enforce the Note

may well not be the entity entitled to receive the economic benefits from payments received thereon.

*Id*.; *see also J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258 (Pa. Super. 2013) (stating that in Pennsylvania mortgage notes are negotiable instruments governed by the Pa UCC).  (R. 208) (Bankruptcy Court noting that it was not incumbent upon PNC to prove it was the "owner of the mortgage," but rather that it had "standing").)

The filing of the Adversary Proceeding also was an attempt to relitigate the issues of lack of standing under the guise of fraud and abuse of process claims. (Adv. Proc. Dkt. Nos. 49 & 56.)    The crux of the claims in the Adversary Proceeding was PNC's lack of standing as the real party in interest to enforce the obligations under the Note and Mortgage. (*Id.*)  These claims were dismissed with prejudice. (Adv. Proc. Dkt Nos. 13, 49, & 56.)  Because of the judgments entered by the State Court in the Foreclosure Action and the Bankruptcy Court in the Adversary Proceeding, the Debtor was precluded from attempting to relitigate these determinations in connection with the Proof of Claim.  *See, e.g., In re Brooks*, 2008 WL 416268 at *5 (Bankr. E.D. Pa. Feb. 13, 2008) (debtor's attempts to dispute via claim objection "the merits of the underlying facts and arguments that gave rise to [a state court foreclosure] determination"  were "precisely what res judicata precludes").  In the Foreclosure Action, the State Court indisputably found that PNC had standing under the Pa. UCC to obtain a foreclosure judgment

25

which was upheld following the Debtor's own Petition to Open Judgment. Therefore, in addition to its undisputed standing as servicer of the Mortgage Loan, PNC established in the Foreclosure Action that it has standing under the Pennsylvania UCC to enforce the Note and Mortgage against the Debtor.  As such, the Debtor cannot argue, under any theory, that PNC lacked standing to file and defend the Proof of Claim, and the Bankruptcy Court's denial of the Debtor's objection to PNC's standing must be upheld.

## 2.    The *Rooker-Feldman* Doctrine Bars Relitigation of PNC's Standing to File the Proof of Claim

Furthermore, the Bankruptcy Court was barred by the *Rooker-Feldman* doctrine from re-adjudicating PNC's standing to foreclose and file the Proof of Claim.   Under the *Rooker-Feldman* doctrine,[6] a federal district court may not exercise subject matter jurisdiction if doing so could result in "overturn[ing] an injurious state-court judgment."   *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).  The doctrine thus bars "cases brought by state-court losers complaining of injuries caused by a state court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

---

[6]   *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

A claim is barred by the *Rooker-Feldman* doctrine in either of two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action;" or (2) "if the federal claim is inextricably intertwined with the state court adjudication, meaning that the federal court relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A "federal claim is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

Case law is replete with decisions applying the *Rooker-Feldman* doctrine where, as here, the borrower's claims implicitly or explicitly seek federal district court review of adverse state court foreclosure judgments. *See In re Madera*, 586 F.3d at 232 (affirming bankruptcy court's ruling that *Rooker-Feldman* barred borrower's claim for rescission under Truth-in-Lending Act because such claim would negate prior state court foreclosure); *Manu v. Nat'l City Bank of Indiana*, 471 Fed. Appx. 101, 105, 2012 WL 928158 at *12 (3d Cir. 2012) (borrower's claims that her statutory and other rights were violated by lender's foreclosure, when lender allegedly had no right to foreclose, were "nothing more than an attack

on the state court judgment"); *Abboud v. Abboud (In re Abboud)*, 237 B.R. 777, 782 (B.A.P. 10th Cir. 1999) (debtor's attempt to attack state court foreclosure judgment by claim objection on theory of defense of statute of limitations not permissible under *Rooker-Feldman* doctrine where judgment itself was only "voidable" and not legally void on limited grounds of fraud on court or lack of jurisdiction).

Here, PNC's standing to foreclose was considered and decided by the State Court in the Foreclosure Action when it denied the Debtor's Petition to Open Judgment. (Bankruptcy Case Dkt. No. 304, Ex. A.) The Debtor's Claim Objection and this appeal is nothing more than an impermissible invitation to review and reject the State Court's determination that PNC is the holder of the Mortgage and the Note and has standing to foreclose (and, therefore, assert a claim in the Bankruptcy Case based on the Note, Mortgage, and judgment entered in the Foreclosure Action). Under the *Rooker-Feldman* doctrine, the Bankruptcy Court could not grant the relief requested by the Debtor.

### F.    Debtor's Argument Concerning Merger of the Note With the Foreclosure Judgment Was Not Raised Below

While not entirely clear for what purpose it is raised, the Debtor attempts to assert an argument based upon the foreclosure judgment entered by the State Court having merged with the Note. (Debtor's Opening Brief at pp. 26-28.) This argument was not raised below and, as a result, is waived. *Belcufine*, 112 F.3d at

638.   Furthermore, to the extent that the Note merged with the foreclosure judgment, there is no dispute that the foreclosure judgment was granted to PNC. As such, this argument actually supports PNC's standing to file the Proof of Claim and provides further grounds upon which this Court should affirm.

## VI.   **CONCLUSION**

For the reasons stated herein, this Court should reach the same conclusion that the District Court reached and affirm the Order Denying Reconsideration and, if the Debtor appealed therefrom, the Claim Objection Order.


Dated: February 2, 2017                    Respectfully submitted,


                                           */s/ Matthew G. Summers*
                                           Matthew G. Summers
                                             (DE State Bar No. 5533)
                                           Ballard Spahr LLP
                                           919 N. Market Street, 11th Floor
                                           Wilmington, Delaware 19801
                                           Tel: (302) 252-4428
                                           Fax: (302) 252-4466
                                           Email: summersm@ballardspahr.com

                                           *Attorneys for Appellee, PNC Bank, National Association*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies as follows:

(1)  In compliance with Rule 28.3(d) of the Third Circuit Local Appellate Rules ("LAR"), Matthew G. Summers is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit;

(2)  In compliance with Rule 32(a)(7) of the Federal Rules of Appellate Procedure ("FRAP"), this brief contains 6,959 words and was prepared in Microsoft Word using fourteen (14) point Times New Roman font;

(3)  In compliance with LAR 31.1(c), this brief was scanned for viruses using System Center 2012 Endpoint Protection, version 2.2.903.0 and no viruses were detected; and

(4)  In compliance with LAR 31.1(c), the electronic and hard copies of this brief are identical.

*/s/ Matthew G. Summers*
Matthew G. Summers
(DE State Bar No. 5533)

## **CERTIFICATE OF SERVICE**

I, Matthew G. Summers, hereby certify that on February 2, 2017, I electronically filed the foregoing Brief of Appellee PNC Bank, N.A. using the Court's CM/ECF system and caused 10 paper copies of the foregoing Brief of Appellee to be delivered to the Clerk's Office.  I further certify that on February 2, 2017, counsel of record for Appellant Linda Merritt was served with an electronic copy of the foregoing Brief of Appellee PNC Bank, N.A. through this Court's CM/ECF System and I caused one paper copy of the foregoing Brief of Appellee PNC Bank, N.A. to be served via first-class mail, postage prepaid, upon counsel to Appellant Linda Merritt at the address below:

> Eugene J. Malady, Esquire
> Eugene J. Malady, LLC
> 211 N. Olive Street, Suite 1
> Media, PA 19063

> */s/ Matthew G. Summers*
> Matthew G. Summers
> (DE State Bar No. 5533)

31